**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**KENNETH DE VOS,**

                      **Plaintiff,**               **MEMORANDUM AND ORDER**

          **-against-**                            **07-CV-804 (RLM)**

**STEPHEN M. LEE, et al.,**

                      **Defendants.**
-------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Currently pending before this Court is a document faxed to Chambers by *pro se* defendants Stephen M. Lee and Adriana Santi ("*pro se* defendants") on January 15, 2010. Although entitled "Response to Plaintiff's Proposed Judgment and Order Granting Summary Judgment" ("*Pro Se* Response"), the document does not simply dispute the amount of the judgment as calculated by plaintiff Kenneth De Vos ("plaintiff") pursuant to the Court's Memorandum and Order dated December 22, 2009 ("M&O"). Rather, *pro se* defendants also challenge the legal conclusions contained in the Court's M&O; citing what they characterize as "an internal inconsistency" in the M&O, see *Pro Se* Response at 2, *pro se* defendants argue that "[p]laintiff should be denied payment and summary judgment altogether." Id. at 3. In other words, the *Pro Se* Response is, in effect, a motion for reconsideration.

      As an initial matter, to the extent that *pro se* defendants are seeking reconsideration of the Court's M&O, their application is untimely. Pursuant to Rule 6.3 of the Local Civil Rules for the Southern and Eastern Districts of New York, a motion for reconsideration or reargument must be served within fourteen days after the entry of the Court's determination of

the original motion. Local Civ. R. 6.3  As the M&O was properly entered on December 28, 2009,[1] any motion for reconsideration had to have been filed on or before January 11, 2010. See Local Civ. R. 6.4 (consistent with revised Fed. R. Civ. P. 6, "Saturdays, Sundays, and legal holidays are no longer excluded in computing periods of time."). Thus, *pro se* defendants' motion for reconsideration is untimely[2] and, on that ground alone, the Court would be justified in denying their application. See, e.g., Cyrus v. City of New York, No. 06 CV 4685(ARR)(RLM), 2010 WL 148078, at *1 (E.D.N.Y. Jan. 14, 2010) (collecting cases).

In any event, having nevertheless reconsidered its M&O, the Court declines to modify any of the rulings contained therein. "Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." Reddy v. Salvation Army, No. 06-CIV-5176 (SAS), 2008 WL 4755733, at *1 (S.D.N.Y. Oct. 27, 2008) (citing Patterson v. United States, No. 04-CIV-3170 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)). Ordinarily, motions for reconsideration should "'be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Id. (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).  Accordingly,

---

[1] When the M&O was first entered into the ECF system on December 23, 2009, an error occurred and only the first page of the opinion was docketed. On December 28, 2009, following the Christmas break and phone calls from Ms. Santi and various attorneys, the entire opinion was docketed. In addition, a copy was transmitted via overnight courier to *pro se* defendants (who have access to court filings through ECF).

[2] Even if *pro se* defendants were deemed to be entitled to an additional three days under Rule 6(d) of the Federal Rules of Civil Procedure, they nevertheless missed the fourteen-day deadline for moving for reconsideration.

"Local Civil Rule 6.3 is narrowly construed and strictly applied so as to avoid repetitive arguments already considered by the Court." Lichtenberg v. Besicorp Group Inc., 204 F.3d 397, 400 (2d Cir. 2000). Given the narrow scope of Local Rule 6.3, a party seeking reconsideration is precluded from "'advanc[ing] new facts, issues or arguments not previously presented to the Court.'" Id.; accord Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp., 948 F.2d 111, 115 (2d Cir. 1991).

The argument now advanced by *pro se* defendants -- i.e., that there is an inconsistency between the Court's conclusions that (1) Lee and Santi's domination of Sun Graphics injured plaintiff, and (2) plaintiff was not prejudiced by the challenged fraudulent conveyances -- was never previously presented to the Court. Notwithstanding this omission, the Court anticipated such an argument and expressly addressed it in the M&O. Specifically, the Court observed that "a plaintiff-creditor may be 'injured' for purposes of the veil-piercing doctrine but, because of the existence of prior liens, nevertheless lack standing to set aside a fraudulent conveyance; *a fraudulent conveyance claim requires a more particularized showing of prejudice.*" M&O at 22 n.18 (emphasis added).

The Court's observation as quoted above is an accurate reflection of the state of the law. "Under New York law, the diversion of funds to make a corporation judgment-proof constitutes a wrong for the purpose of determining whether the corporate veil should be pierced," particularly where, as in this case, the defendant "has notice of a potential claim" at the time of the diversion of funds. JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., 386 F.Supp.2d 461, 476 (S.D.N.Y. 2005); accord Capital Distrib. Servs.,

Ltd. v. Ducor Express Airlines, No. 04-CV-5303 (NG)(VVP), 2007 WL 1288046, at *3-4 (E.D.N.Y. May 1, 2007) (by diverting substantially all of the corporation's assets upon being served with plaintiff's complaint, owner of corporation "used his domination to perpetuate [sic] a wrong against" plaintiff). In other words, for purposes of determining whether to pierce the corporate veil, a creditor or potential creditor satisfies the injury requirement by establishing that the owner-defendant siphoned corporate funds at a time when the corporation had increasing liability to creditors and was unable to satisfy its debts. See Balmer v. 1716 Realty LLC, 05-CV-839 (NG)(MDG), 2008 WL 2047888, at *6 (E.D.N.Y. May 9, 2008). Measured against these standards, Lee and Santi's dominance of Sun Graphics proximately injured plaintiff. See M&O at 19-22.

In contrast, under New York law, a creditor may not maintain a fraudulent conveyance claim where the transferred property is encumbered by sufficient prior liens such that the creditor-plaintiff would not be entitled to reach any portion of the property if the conveyance were set aside. See Chemtex, LLC v. St. Anthony Enters., Inc., 490 F.Supp.2d 536, 542 (S.D.N.Y. 2007) ("[A] complaining creditor must first plead and then demonstrate that it had an equity stake in the debtor's assets -- that is, that some portion of the debtor's assets would have been available to satisfy the unsecured creditor's claims had there been no conveyance. Absent any such equity in the assets conveyed, an unsecured creditor lacks standing to challenge the conveyance as fraudulent.") (citations omitted); Miller v. Forge Mench P'ship Ltd., No. 00 Civ. 4314(MBM), 2005 WL 267551, at *4-5 (S.D.N.Y. Feb. 2, 2005) (plaintiff-creditor lacked standing under New York's fraudulent conveyance statute where "[non-party

creditor's] secured debt exceeded the value of [debtor's] foreclosed-upon assets by about $2.5 million, and thus dwarfed the approximately $445,000 judgment owed to [plaintiff-creditor]"); A/S Kreditt-Finans v. Cia Venetico de Navegacion S.A. of Pan., 560 F.Supp. 705, 711 (E.D. Pa. 1983) (because, under New York law, plaintiff-creditor could not have looked to property encumbered by prior liens as a source of payment, it could not have been injured by the fraudulent conveyance), aff'd, 729 F.2d 1446 (3d Cir. 1984); see also Hamilton Nat'l Bank v. Halstead, 134 N.Y. 520, 523-24 (1892) (where a debtor-defendant wrongfully transfers property that is subject to a valid pre-existing mortgage held by a third party, a complaining creditor cannot set aside the interest secured by the mortgage, as the creditor has not been harmed by the transfer of that interest). Applying these legal principles, the Court ruled that plaintiff lacked standing under New York's fraudulent conveyance law, as he failed to establish that he had an equity interest in the transferred assets, which were encumbered by tax and other liens aggregating $1,378,913.66. See M&O at 36-38.

In short, in ruling on the parties' various dispositive motions, the Court was well aware of the different legal standards applicable to plaintiff's veil-piercing claim and plaintiff's fraudulent conveyance claims. See M&O at 21-22 (citing cases finding injury sufficient to pierce the corporate veil); id. at 27-33 (collecting cases defining injury under New York's fraudulent conveyance statute). A finding of liability on a fraudulent conveyance claim -- which usually seeks to re-establish the *status quo ante* and set aside the challenged transaction -- must be premised on a highly particularized showing of injury. As this Court correctly recognized, having reviewed relevant precedent, these stringent requirements do not apply to

the veil-piercing analysis, pursuant to which the plaintiff need not establish equity in the siphoned funds. Thus, the alleged inconsistency of which *pro se* defendants now complain was considered by the Court and is simply the result of the Court's application of two lines of firmly established legal principles to two sets of entirely different claims. *Pro se* defendants thus point to no controlling decisions or data that the Court overlooked in issuing its decision. The Court therefore declines to modify its M&O.[3]

**SO ORDERED.**

Dated:   **Brooklyn, New York**
         **January 19, 2010**

                                        **ROANNE L. MANN**
                                        **UNITED STATES MAGISTRATE JUDGE**

---

[3] To the extent that *pro se* defendants additionally challenge the monetary calculations contained in plaintiff's Notice of Proposed Judgment (Jan. 7, 2010), the Court will address that challenge after the January 21st deadline for plaintiff's reply.